**In re GILLETT HOLDINGS, INC., Debtor.**

**Bankruptcy No. 91–12465–SBB.**

United States Bankruptcy Court, D. Colorado.

June 24, 1992.

Virginia S. Grogan, Latham & Watkins, Los Angeles, Cal., for Smith Barney Harris Upham & Co.

James T. Burghardt, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, Colo., for Creditors' Committee.

James A. Donohoe, Donohoe, Jameson & Kolb, L.L.P., Dallas, Tex., for Nationsbank of Texas, N.A.

Office of U.S. Trustee, Denver, Colo.

## ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Second Quarterly Application of Smith Barney, Harris Upham & Co., Inc. ["Smith Barney" or the "Applicant"] for Interim Allowance of Compensation and Reimbursement of Expenses filed March 6, 1992 (the "Second Application") and the comments thereon filed by (1) the Official Creditors' Committee on April 24, 1992; and (2) the United States Trustee on April 29, 1992. The Applicant seeks compensation for fees in the amount of $450,000.00 and reimbursement of expenses in the

amount of $20,450.35 [1] for the period October 6, 1991 through January 5, 1992. The Court, having reviewed the file and being advised in the premises,

DOES FIND as follows:

1. On February 6, 1992, this Court issued a Memorandum Opinion and Order on the First Quarterly Application of Smith Barney, Harris Upham & Co., Inc. for Interim Allowance of Compensation and Reimbursement of Expenses. *In re Gillett Holdings, Inc.,* 137 B.R. 475 (Bankr.D.Colo. 1992). The February 6, 1992 Memorandum Opinion and Order is, in its entirety and in all its particulars, adopted and incorporated herein.

2. In the February 6, 1992 Memorandum Opinion and Order, this Court concluded that the First Smith Barney Quarterly Application "utterly fail[ed] to establish that $150,000.00 per month is a reasonable fee rate, or 'reasonable compensation for actual, necessary services rendered.'" *Id.,* at 489 (quoting 11 U.S.C. § 330(a)(1)). After an extensive analysis, this Court allowed $298,343.25 of the $800,000.00 fee requested by Smith Barney.

3. This Court found in its first Smith Barney fee application Opinion that it was:

[S]imply unable to conclude that [the requested] $800,000.00 worth of services have been rendered for the benefit of the estate. This Court is cognizant of the "strange and wonderful" world of investment banking where such relatively risk-free arrangements are commonplace, but this is the world of bankruptcy ... this is reality. [Footnote omitted. Citations omitted.] This Court is bound by the Bankruptcy Code with "the responsibility of ensuring that the compensation awarded to professional persons falls within the parameters prescribed by section 330." [Citation omitted.] This responsibility does not bow to the customs and practices of any profession, even investment banking.

*Id.,* at 488–489.

The Court then awarded a reasonable fee, reducing Smith Barney's $800,000.00 requested fee by $501,656.75, based on various factors and predicated on recognized standards derived from controlling case law.[2]

4. Smith Barney continues in this, its Second Application, to maintain it is entitled to a $150,000.00 per month flat rate fee. The instant Second Application argues that this Court improperly "modified" Smith Barney's employment terms amounting to "an *ex post facto* revision of the terms of the engagement agreed to by GHI and Smith Barney, which terms were specifically approved by the Court." Second Application, p. 4. *See, e.g., In re Confections by Sandra, Inc.,* 83 B.R. 729 (9th Cir. BAP 1987). 11 U.S.C. § 328(a).

5. This Court initially declined to approve employment of Smith Barney as investment advisor to the Debtor. *See, In re Gillett Holdings, Inc.,* 137 B.R. 452 (Bankr.D.Colo.1991). In a lengthy and detailed opinion, the Court critiqued and rejected various elements of the original Smith Barney employment arrangements with the Debtor. The Court concluded that:

[T]he Debtor may not employ the Investment Bankers under the terms and conditions proffered despite assertions that the terms and conditions are "customary" in the investment banking business and in other similar Chapter 11 cases.[3]

---

1. The amount requested as reimbursement for expenses in the instant Second Application represents a significant reduction from the $55,896.06 requested for the previous period (of which only $11,058.23 or 19.78% was allowed by this Court.)

2. "The Tenth Circuit has established a framework, or checklist, of considerations in awarding fees. *Matter of Permian Anchor Services, Inc.,* 649 F.2d 763 (10th Cir.1981) (adopting the standards set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)).

[Footnote omitted.] That framework is to be applied to fees in a bankruptcy case. *In re Grayhall Resources, Inc.,* 1990 WL 314011 (Bankr.D.Colo.1990) (not reported in B.R.)." *In re Gillett Holdings, Inc.,* 137 B.R. 475, 480–481 (Bankr.D.Colo.1992).

3. The Court also noted, in the Opinion, that:

Smith Barney [is] presently working for the Debtor under an interim Order entered June 27, 1991 and extended August 12, 1991, pending submission and approval of employment

*Id.,* at 454 (footnote omitted).

6. As to the fee rate and structure requested by Smith Barney—$150,000.00 per month flat fee plus fixed "success fees"—the Court stated that:

> This Court does not here find that flat monthly payments are never permissible, or *per se* invalid, only that such payments have not been justified in this case.

*Id.,* at 457 (emphasis added).

7. Employment of Smith Barney by the Debtor was expressly subject to the requirement that Smith Barney:

> [B]e held to the same basic practice and standards of other professionals if they wish to be employed in this case; this includes filing informative, legally sufficient fee applications which allow for scrutiny and accountability as to the services rendered and fees requested. It also includes application of the "reasonable compensation" standard to fees paid. 11 U.S.C. § 330(a)(1).[4]

*Id.,* at 457 (emphasis in original).

8. The August 29, 1991 Order Authorizing Employment of Smith Barney, Harris Upham & Co., Inc. provides, in part, as follows:

> ORDERED that Gillett Holdings, Inc. ("GHI") be, and it hereby is, authorized to employ Smith Barney with the compensation and reimbursement for expenses of Smith Barney to be fixed by further order of the Court, . . . . It is

agreements whose terms comply with the guidelines set forth herein.
*In re Gillett Holdings, Inc.,* 137 B.R. 452, 454 n. 3 (Bankr.D.Colo.1991).

**4.** To emphasize the Court's objection to Smith Barney's employment terms such as a flat monthly fixed fee, elimination of sufficient time records and reporting requirements, and automatic, built-in "success fees," the Court explicitly rejected the "customary" investment bankers practices:

> The overwhelming tendency toward allowing special treatment for investment bankers and perhaps other selected professionals that has customarily been prevalent heretofore, must give way to new notions of fairness, bankrupt-

FURTHER ORDERED that the engagement letter, dated August 8, 1991 ... between GHI and Smith Barney ... be and it hereby is, approved and made a part of this Order and the retention of Smith Barney. It is

FURTHER ORDERED that the employment of Smith Barney shall be in accordance with and subject to this Court's Memorandum Opinion and Order of August 23, 1991.
(Emphasis added.)

■ 9. Smith Barney persistently continues to claim it is entitled to a $150,000.00 flat monthly fee for services. Smith Barney does not get it. This Court rejected—completely, expressly, and with finality—their demand for fees as the flat, fixed rate of $150,000.00 per month.

■ 10. Despite this Court's orders, Smith Barney still invokes the position that "custom in the industry" is the standard by which their fees request is to be measured, pursuant to 11 U.S.C. § 328(a), not a reasonable fee test in accordance with 11 U.S.C. § 327(a). The deference afforded under Section 328(a) does not apply unless the appointment order "expressly and unambiguously state[s] specific terms and conditions (e.g. specific hourly rates or contingency fee arrangements) that are being approved pursuant to the first sentence of section 328(a), [otherwise] the terms and conditions are merely those that apply in the absence of specific agreement." *In re C & P Auto Transport, Inc.,* 94 B.R. 682, 685 n. 4 (Bankr.E.D.Cal.1988) (emphasis added).[5]

cy equity, and recognition of changed economic circumstances of the 1990's.
*Id.,* at 456.

**5.** In view of Smith Barney's claim of ambiguity in the August 29, 1991 Order, this Court reiterates, again, that Section 327(a) rather than Section 328(a) applies. Accord, *In re Taxman Clothing Co., Inc.,* 134 B.R. 286, 289 (N.D.Ill. 1991) ("Ordinarily, an appointment request 'does not seek to impose any particular terms and conditions and leaves the question of compensation until later'; the mere recitation of the attorney's 'usual billing rate,' ... is sufficiently ambiguous to warrant a finding that § 327(a) is the pertinent provision of the Bankruptcy Code.") (quoting *C & P Auto Transport, supra* at 685).

11. The time records appended to the Second Application can be summarized as follows:

| | 10/07–11/05 | 11/06–12/05 | 12/06–01/05 | TOTAL |
|---|---|---|---|---|
| **Benninger** | 68.55 | 133.85 | 71.40 | 273.80 |
| **Nora** | 122.30 | 135.25 | 84.25 | 341.80 |
| **Venturi** | 51.40 | 14.55 | 0.00 | 65.95 |
| **Curtis** | 29.00 | 0.00 | 0.00 | 29.00 |
| **Cramer** | 17.75 | 45.85 | 63.20 | 126.80 |
| **TOTAL** | 289.00 | 329.00 | 218.85 | 837.35 |

12. Using the totals developed above, the following weighted or blended rates are found:

| | FEES | HOURS | BLENDED RATE |
|---|---|---|---|
| 10/07–11/05 | $150,000 ÷ | 289,00 = | $519.03/hour |
| 11/06–12/05 | 150,000 ÷ | 329.50 = | 455.24/hour |
| 12/06–01/05 | 150,000 ÷ | 218.85 = | 685.40/hour |
| TOTAL | $450,000 ÷ | 837.35 = | $537.41/hour |

13. Smith Barney estimates that at least 225.0 hours of work were expended by various other departments during the time period at issue. Although not technically in conformity with fee application requirements, this Court has considered, but discounted by one-half, the estimated contributions of these other professionals. This Court has already addressed the propriety of seeking compensation for professionals who are not identified, whose time is not recorded simultaneously and coupled with meaningful disclosure of services rendered, and whose accountability is entirely legally insufficient. It is not proper to compensate for such services. *Accord, In*

*re Wire Cloth Products, Inc.*, 130 B.R. 798, 806 (Bankr.N.D.Ill.1991).

■ 14. Again, Smith Barney requests compensation significantly in excess of the reasonable fee standards referenced in and applied by this Court in its first opinion of February 6, 1992. Hourly rates up to $685.40 per hour are, under the circumstances, unreasonable, unacceptable, and not within the parameters of applicable fee guidelines and case law. *See, In re Gillett Holdings, Inc.*, 137 B.R. 475 (Bankr.D.Colo. 1992). This is particularly true given the prospect of a so-called $3,000,000.00 "success fee" previously sought by Smith Barney and potentially available in a final compensation package to be approved by the Court. In fact, an hourly fee up to $685.40 coupled with a potential $3,000,000.00 success sought by Smith Barney may be ridiculous.[6]

15. The instant Second Application continues to suffer from some of the same deficiencies pointed out in the February 6, 1992 Memorandum Opinion and Order.

    a. Time not recorded in tenths of hour increments;[7]

    b. Timekeeping tasks;[8]

    c. Travel time lumped with other, fully compensable activities;[9]

    d. Pure travel time;[10] and

    e. Duplication of effort.[11]

■ 16. This Court is unable to conclude that $450,000.00 worth of services have been rendered for the benefit of the Estate. This Court will, instead, allow a gross fee of $237,462.50 (949.85 hours[12] × $250.00/hour[13].) The Court will deduct from that figure (a) one-half (50%) of the time allocated to travel, or $17,637.50 (70.55 hours × $0.00/hour), and (b) $21,982.50, or ten percent (10%), for the specified billing, recordkeeping, fee application deficiencies, and award the sum of $197,842.50 as net interim fees for the period commencing October 6, 1991 through January 5, 1992.

17. This Court believes that it is appropriate to maintain the special holdback of 50% of the fees allowed. This is particularly true given the overpayment to Smith Barney at the onset of the case.

18. The Applicant requests that this Court authorize the reimbursement of the following expenses:

---

**6.** *See, Smith v. Freeman*, 921 F.2d 1120 (10th Cir.1990), wherein the Tenth Circuit opined that: "As a general comment, we observe that $150 is a more than generous hourly fee."

**7.** *See, e.g.*, Mr. Benninger's 10/11/91, 10/24/91, 10/25/91, 10/28/91, 10/29/91, 11/6/91, 11/8/91, 11/13/91, 11/15/91, and 11/21/91 entries; Mr. Nora's 10/9/91 (twice), 10/14/91, 10/16/91, 10/17/91, 10/18/91, 10/24/91 (twice), 10/28/91, 10/31/91, 11/1/91, 11/3/91, 11/6/91, 11/8/91 (twice), 11/13/91, 11/15/91 (twice), 11/20/91, 11/21/91, 11/22/91, 12/6/91, 12/17/91, and 12/23/91 entries; Mr. Venturi's 11/14/91, 11/15/91 and 12/2/91 entries; Mr. Curtis' 10/7/91 and 10/31/91 entries; and Mr. Cramer's 10/7/91, 10/28/91, 10/31/91 (twice), 11/4/91, 11/12/91, 11/13/91, 11/15/91, 11/21/91, 12/5/91, 12/9/91, 12/10/91, 12/11/91 (twice), 12/12/91, 12/16/91 (twice), 12/17/91 and 12/19/91 entries.

**8.** *See, e.g.*, Mr. Benninger's 12/2/91 entry for 1.0 hour and Mr. Cramer's 12/3/91, 12/16/91 and 12/17/91 entries for a total of 4.15 hours.

**9.** *See, e.g.*, Mr. Benninger's 11/4/91, 11/5/91, 11/18/91, 11/25/91 (twice), 11/26/91 (twice), 12/9/91, and 12/10/91 entries for a total of 38.9 hours; Mr. Nora's 10/14/91, 10/15/91, 10/16/91, 10/17/91, 10/18/91, 11/3/91, 11/5/91, 11/18/91, 11/22/91, 11/25/91 (twice), 11/26/91 (twice), 12/1/91, 12/2/91, 12/9/91, 12/10/91, 12/16/91 and 12/17/91 entries for a total of 78.7 hours; Mr. Venturi's 10/14/91 and 11/4/91 entries for a total of 8.5 hours; and Mr. Curtis' 11/4/91 entry for 4.5 hours.

**10.** *See, e.g.*, Mr. Benninger's 11/19/91 entry for 5.0 hours; Mr. Nora's 10/18/91 entry for 2.0 hours; and Mr. Venturi's 10/15/91 entry for 3.5 hours.

**11.** *See*, entries summarized in Schedule I to comments of Official Creditors' Committee.

**12.** $837.35 + (225.0 \times 0.5) = 949.85$

**13.** *See, In re Gillett Holdings, Inc.*, 137 B.R. 475, 489 (Bankr.D.Colo.1992) (determining $250.00 per hour to be an appropriate default "measure for the reasonableness of Smith Barney's compensation rate.").

| EXPENSE | AMOUNT |
|---|---:|
| Airfare | $13,650.00 |
| Lodging | 2,366.28 |
| Local Transportation | 1,064.97 |
| Meals | 375.50 |
| Airport Parking | 30.00 |
| Other | 217.55 |
| Courier/Federal Express | 1,761.01 |
| Cabs for Secretaries | 472.73 |
| Conference Calls | 206.73 |
| Copies | 113.66 |
| Cellular Phone | 107.02 |
| Local Meals | 56.37 |
| GTE Airphone | 28.23 |
| **TOTAL** | $20,450.35 |

19. This Court will reduce the fees requested for travel expenses by $5,640.00 in airfare and $627.69 in lodging.[14] These amounts represent the direct cost of two or four Smith Barney professionals travelling to the same meeting.[15]

20. The remaining expenses are well documented and will be allowed.

Accordingly, it is

ORDERED that the Second Quarterly Application of Smith Barney, Harris Upham & Co., Inc. for Interim Allowance of Compensation and Reimbursement of Expenses filed March 6, 1992 is ALLOWED, IN PART, to the extent of $197,842.50 in fees and $14,182.66 in expenses, and DENIED, IN PART, to the extent of $252,-157.50 in fees and $6,267.69 in expenses; and it is

**14.** This amount also included charges for television movies viewed by Mr. Venturi in his hotel room.

**15.** *See,* 10/14/91—10/15/91 trip to Denver by Mr. Nora and Mr. Venturi; 11/3/91—11/5/91 trip to Chicago by Mr. Benninger, Mr. Nora, Mr. Venturi, and Mr. Curtis; and 11/18/91–11/22/91 trip to Chicago by Mr. Benninger and Mr. Nora.

FURTHER ORDERED that all amounts allowed hereby are subject to review and possible recapture following a final hearing on compensation and reimbursement.