**In re the CIRCLE K CORPORATION; Circle K Convenience Stores, Inc.; Circle K Management Company; Lar–Lin, Inc.; First Circle Properties, Inc.; Utotem, Inc.; Utotem Markets of Arizona, Inc.; U Totem of Alabama, Inc.; U–Tote'm of Colorado Inc.; U–Tote'm of Miami, Inc.; Tic Toc Systems, Inc.; Monterre Properties, Inc.; Shop & Go, Inc.; Circle K General, Inc.; Circle K Hawaii, Inc.; Combined Aviation Co.; Charter Marketing Company (Connecticut); Charter Marketing Company; Mr. B'S Oil Co., Inc.; Mr. B'S Food Mart, Inc.; NPI Corporation; Old Colony Petroleum Company, Inc.; New England Petroleum Distributors, Inc.; and 44th Street & Camelback Limited Partnership, Debtors.**

**Bankruptcy Nos. B–90–5052–PHX–GBN to B–90–5075–PHX–GBN.**

United States Bankruptcy Court, D. Arizona.

April 5, 1994.

to the note and security agreement, the basis of the original claim.

Alisa C. Lacey, Davis & Lowe, P.C., Gehl P. Babinec, Sr. V.P. and Gen. Counsel, Circle K Corp. and Donald L. Gaffney, Snell & Wilmer, Phoenix, AZ, for debtors.

Thomas H. Allen, Staff Atty., U.S. Trustee, Phoenix, AZ.

## ORDER

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

This matter involves the reorganized debtors' ("New Circle K") objection to the final fee application of Salomon Brothers, Inc. ("Salomon"), filed October 8, 1993. Docket No. 14970. Applicant moved for summary judgment, Docket No. 15598, arguing it has an approved flat fee arrangement, negotiated with the debtor in possession and the official unsecured creditors' committee. Salomon states it is not required to provide an hourly, detailed fee application, and that 11 U.S.C. § 330 and Rule 2016(a), Fed.Bankr.R., are inapplicable. *Supra* at 3–4.

The Court finds, based on the papers submitted for movant's appointment, this final fee application will be reviewed through the pertinent Code sections, Rules and case law applicable to all professional fees. Salomon must submit a detailed fee application.

### I

This matter began with an August 10, 1990 stipulation between the debtors in possession and the official committees resolving debtors' motion to merge the committees of unsecured creditors and debenture holders. Docket No. 1076. In that stipulation, the

parties agreed to procedures governing retention of financial advisors by the Committees. *Id.* at 8.

Debtors stipulated each official committee, subject to Court approval, could retain a financial advisor. The committees acknowledged debtors had the right to object to the terms of retention, including compensation. *Id.* The committees acknowledged there could be times when the services of financial advisors were not essential. In recognition, each committee would use its best efforts to seek discrimination in the monthly fees, consistent with avoiding unnecessary work and costs. *Id.* at 9 and 10.

With this framework, the official unsecured creditors' committee filed its application to retain Salomon. Docket No. 3175. Attached to that application was an engagement letter. The committee sought approval for retention of Salomon under §§ 328 and 1103. The papers proposed Salomon would receive $100,000 per month, payable in advance, with the first payment due on entry of the retention order. *Id.* at 6. If the services performed in any month were insubstantial, or the Committee requested Salomon refrain from providing services, the monthly fee would be reduced. Salomon would provide debtors with a monthly fee invoice detailing services performed. All fees paid were subject to Court approval upon submission of a final fee application. *Id.* at 6 and 7. Debtors would also reimburse Salomon for out-of-pocket expenses. *Id.* at 7.

After a hearing, and without objection, an order was entered approving the retention on April 16, 1991. Docket No. 3817. That order authorized debtors to pay Salomon $100,-000 per month, and pay out-of-pocket expenses on the terms set forth, subject to Court review of a final fee application. *Id.* at p. 2.

On April 8, 1992, a joint application by the unsecured creditors' committee, creditor Citibank and certain senior secured noteholders sought to modify Salomon's retention. Docket No. 6913. Movants stated Salomon had received $100,000 per month, except for August and September 1991, when it received $25,000 monthly. Movants noted payment was subject to Court approval of a final fee application. *Id.* at 13.

The papers discussed the need for additional services, denominated "divestiture services," and that Salomon would receive a monthly fee of $62,500. These additional services involved solicitation of competing bids for debtors' assets. The monthly fee would be credited against the success fee, if any, upon later approval of a final fee application, supported by time records submitted to the U.S. Trustee. *Id.* at p. 14. The attached form engagement and protocol agreement also stated Salomon would submit a final fee application supported by time records submitted to the U.S. Trustee. Exhibit A to Docket No. 6913, at p. 3. The joint application noted Salomon would continue to be retained through the engagement letter and April order for its earlier duties.

The joint application was approved on April 16, 1992. Docket No. 6990. The order reflects debtors would pay Salomon $62,500 per month, out-of-pocket expenses and a success fee on the terms in the application and engagement agreement, subject to judicial review of a final application. The Court further ordered that each financial advisory would continue to render prior services on the terms and conditions previously approved.

A second joint application was filed on August 7, 1992, Docket No. 8319, to clarify the engagement. The amended engagement provided that except as amended, the terms of the engagement remain in full force and effect. *Id.* at p. 4. The monthly fee of $62,500 would no longer accrue after July 31, 1992. This second joint application was approved on October 15, 1992. Docket No. 9008.

II

On October 8, 1993, Salomon filed a 15 page final fee application without the assistance of counsel. Docket No. 14970. Final approval of $3,228,973 is sought, of which $448,301 is unpaid. *Id.* at p. 14. There is a brief general description of services performed, pages 8–9, and expenses incurred. Pages 12–14. Applicant notes it voluntarily reduced its monthly retainer for 9 of 26

retention months. Five thousand hours were reportedly spent on this case. Page 4. No support for this figure is provided. When debtors objected to the fee application, applicant filed the instant motion for summary judgment.[1]

The Salomon appointment, consisting of three separate applications with attached agreements and engagement letters, was not a routine appointment. Notwithstanding this complexity, the Court must review the fee application through pertinent Code sections, Rules and case law, as with any other professional fee. The issue is whether to require a detailed fee application.

### III

### THE ORIGINAL RETENTION AGREEMENT

■ A committee with court approval, may employ a professional on reasonable terms and conditions. 11 U.S.C. § 328(a). Notwithstanding approved terms, the court may later award compensation different from the agreement, if the original terms prove improvident. *Supra.* However, where the Bankruptcy Court has previously approved the terms for compensation of a professional, it cannot alter those terms unless it finds the original terms improvident in light of developments not capable of being anticipated originally. *Pitrat v. Reimers (In re Reimers)*, 972 F.2d 1127, 1128–29 (9th Cir.1992). *Reimers* noted: "The bankruptcy court assumed that section 330 gave it the power to make a general 'reasonableness' review, despite the express language of section 328. Neither it, nor the district court, cited any authority supporting this disregard of the statutory language." *Supra,* at 1129.

Subject to §§ 326, 328 and 329, the court may award a professional, reasonable compensation for actual, necessary services, based on the nature, extent and value of such services, time spent, and costs of comparable work, as well as reimbursement for actual,

necessary expenses. 11 U.S.C. § 330(a). These sections work together. Section 330(a) provides the framework for fee and cost review, expressly subject to the limitations of § 328(a). Debtors argue the April 16, 1991 order did not unconditionally approve the employment terms. Instead, the Court was "approving the terms of Salomon's interim compensation while specifically reserving the Court's right to review the reasonableness of that compensation." Response at 10, Docket No. 15941. This argument is incorrect.

The Court approved a definite fee arrangement; the initial employment order did not merely provide for payment of unspecified future compensation. However, the order required a final fee application, subject to judicial review.

■ The engagement letter and application were filed following a stipulation between the committees and debtors outlining the rules for retention of financial advisors. Docket No. 1076. It is clearly expressed that the financial advisor would receive monthly fees. Thus, the parties contemplated a flat fee arrangement. Flat monthly payments are not per se invalid, but must be justified in each particular case. *In re Gillett Holdings, Inc.*, 137 B.R. 452, 457 (Bankr. D.Colo.1991).

■ The language in the retention order providing for review of final fees does not automatically mandate detailed time keeping. *Cf. In re Gillett Holdings, Inc.*, 143 B.R. 256, 259 (Bankr.D.Colo.1992) (retention order specifically notes debtor was authorized to employ a professional with compensation and reimbursement to be established later).

■ Arguably, the original retention agreement meets the bare requirements of § 328(a). If so, the Court must follow the *Reimers* admonition. However, even if highly detailed time entries are not required, the

1. Applicant filed an amended fee application on December 13, 1993. Docket No. 15597. Salomon now requests approval of $3,150,000 (including a $1 million success fee) and reimbursement of expenses of $203,973. Salomon filed the amended fee application because, when it filed

the original, it believed it had an agreement for the unpaid amount it would receive under the final fee application. Prior to negotiating with debtors, Salomon calculated total unpaid fees at $530,000. Based upon a misunderstanding, Salomon amended its application.

Court must still determine Salomon actually did the work.

The agreement specifically provided that if services performed were insubstantial, the monthly fee would be reduced accordingly. This is a flexible flat fee arrangement. It follows the earlier stipulation that there may be periods when services were not essential. Discrimination in the monthly fees was required, consistent with avoiding unnecessary advisory work. Docket No. 1076 at 9–10.

Salomon states for nine of the months it was retained, it voluntarily reduced its fees. Docket No. 14970 at p. 7. What were the criteria for these reductions? We are not told. New Circle K should have the opportunity to examine whether additional reductions are warranted. Based on the work done in months of a reduced fee, objector could compare months where the full fee was paid. In short, assuming the flat fee arrangement meets § 328(a) requirements, the Court must still examine in detail the final application, based on the parties' express agreement.

### IV

#### THE DIVESTITURE AGREEMENT

■ Assuming § 328(a) is satisfied for the first retention, it is clear a different arrangement for "divestiture services" is outlined in the April 8, 1992 papers. The joint application at page 14 reflects:

(1) A monthly fee of $62,500 ..., payable by the Debtors in advance, with the first payment due upon the entry of an order authorizing the engagement ..., but subject to (a) the aggregate monthly fee being credited against the success fee, if any, ... and (b) subsequent court approval upon submission by each of Salomon and Alex. Brown of a final fee application supported by time records submitted to the U.S. Trustee.

Docket No. 6913.

This approved application clearly mandates applicant was to submit time records with its final application. According to the amended engagement, attached to the second joint application, Docket 8319, four monthly payments of $62,500 were contemplated from April, 1992 through July, 1992. Payments stopped after July 31, 1992. Under this retention order, detailed time entries are required. They were not provided.

### V

Summary judgment is denied. The application will be supplemented to reflect time records supporting the $62,500 per month fee and the earlier "flat fee" agreement. As to the latter, Salomon's final fee application reports it agreed to modify customary billing and provide hourly accounting for the activities of its bankruptcy professionals. Application at 7, Docket No. 14970. It should not be difficult to provide the required information. Salomon further notes it kept detailed records of its expenses. *Id.* at 12.

As a final note, the application, as amended, is inadequate even without objection. There is no analysis on how the compensation amount is computed, nor are out-of-pocket expenses detailed. A cursory summary is merely provided.