In re The CIRCLE K CORPORATION; Circle K Convenience Stores, Inc.; Circle K Management Company; Lar–Lin, Inc.; First Circle Properties, Inc.; Utotem, Inc.; Utotem Markets of Arizona, Inc.; U Totem of Alabama, Inc.; U–Tote'm of Colorado Inc.; U–Tote'm of Miami, Inc.; Tic Toc Systems, Inc.; Monterre Properties, Inc.; Shop & Go, Inc.; Circle K General, Inc.; Circle K Hawaii, Inc.; Combined Aviation Co.; Charter Marketing Company (Connecticut); Charter Marketing Company; Mr.

B's Oil Co., Inc.; Mr. B's Food Mart, Inc.; NPI Corporation; Old Colony Petroleum Company, Inc.; New England Petroleum Distributors, Inc.; and 44th Street & Camelback Limited Partnership, Debtors.

Bankruptcy Nos. B–90–5052–PHX–GBN to B–90–5075–PHX–GBN.

United States Bankruptcy Court, D. Arizona.

Jan. 17, 1996.

Applicant did not provide sufficient detail to justify a professional fee of $3,507,699.35. Given the particular circumstances of this case, the Court will exercise discretion, adopting objector's suggestion that one-half of the requested fees be approved, instead of denial of the entire application. *Cf. Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir.1995) (court has discretion to deny all fees in failure to disclose situation). The facts necessary for an understanding of this resolution follow.

Craig D. Hansen, Squire, Sanders & Dempsey, Phoenix, AZ, for Houlihan, Lokey, Howard & Zukin.

Gehl P. Babinec, Sr. V.P. and General Counsel, The Circle K Corporation, Phoenix, AZ, Christopher H. Bayley, Snell & Wilmer, Phoenix, AZ, for Circle K Corporation.

## ORDER

GEORGE B. NIELSEN, Jr., Chief Judge.

The objection of reorganized debtor Circle K Corporation ("debtor") to the amended final fee application of Houlihan, Lokey, Howard & Zukin, Inc. ("Houlihan") was submitted for decision. Document 17969, filed Aug. 22, 1995.

The Court is personally familiar with the services provided by the applicant investment banking firm and has no difficulty in concluding such services benefited in some measure these jointly administered estates. Regardless, applicant's failure to keep time records and consequent inability to produce a fully detailed fee application prevent approval of the full fee requested.[1]

### I

On July 25, 1991, the Court entered a ruling on various objections to fee applications of professionals. Docket No. 4790. In the July order, the Court placed professionals on notice of billing and expense reimbursement practices that were not condoned or approved. These included:

time entries for inter and intra-office conferences which do not contain a brief but full explanation of the nature and scope, etc. of the meeting;

time entries for two individuals attending same function where one is essentially performing as an assistant to the other absent some showing the presence of both was necessary and contributed to the outcome of the function;

expenses for which no receipts are provided to back up and support the expense;

overhead or profit factors that are properly considered a cost of business, such as Fax, reproduction costs, and computer research charges that are greater than the actual cost of the machine and materials;

bar bills, on-board beverage services, inroom movies;

air travel expenses for which frequent flyer miles paid for by the estate could have been used to reduce or eliminate such expenses; and

---

1. After repeatedly advising the Court further documentation of its application was not feasible, applicant now plans to further document its application. Transcript of September 14, at pages 8–12, Docket No. 18064; Houlihan Statement of Position filed October 18, 1995; Docket No. 18062. This is presumably in response to the Court's preliminary ruling of October 3. Docket No. 18045. Debtor opposes the proposal. Docket No. 18072. Applicant filed revised monthly billings for January 7, 1992 through March 20, 1993, on November 20, 1995. Docket No. 18111. Debtor objected. This latter dispute is not currently ripe for adjudication.

travel time not billed at a reduced travel rate.

Transcript of July 9, 1991, at 13–20, Docket 4790.

On December 18, 1991, the Court entered an amended order. Docket 5960. This December order mandated that:

1) professionals submit detailed monthly statements to support their requests which contain:

a) a summary of total fees earned and expenses incurred by the professional during the month, and the total payment less 20% holdback;

b) a list of billing rates for each;

c) a summary of the time billed to each project during each calendar month by individual;

d) a detailed listing of services by each professional during the month categorized by project and day, with the time an individual spent on each discreet task;

e) an itemized list of expenses regarding the calendar months and backup receipts for lodging, air and mail expenses; and

f) a brief progress report outlining key projects involving significant outlays of time and expense.

Docket 4790, at 3–5.

The December order also provided:

2) failure to object to a monthly statement would not act as a waiver of any right to object to a final fee application;

3) all amounts paid to a professional under the order were interim and subject to review . . .

4) that when traveling, the professional would be allowed to bill 100% of their time if working on case matters that were detailed in the monthly statements and only 25% of their billable rate if no such work was performed.

*Supra* at 5–7.

No order expressly applied these procedures to investment bankers. However, Houlihan and the United States Trustee reached an agreement independently requiring Houlihan to comply with the July, 1991 order, which established a reporting procedure requiring filing detailed time records

with the Court. *See* Houlihan Letter of December 6, 1991, responding to U.S. Trustee's Letter of Nov. 22, 1991, Exhibits C and D, Docket No. 17761. Houlihan agreed it would justify the reasonableness of its fees and expenses. Applicant expressly agreed to submit fee applications, which contained detailed descriptions of services in not greater than half hour increments as of November 1, 1991. Exhibit D, *supra.*

A final fee application on October 8, 1993, reported services rendered and expenses incurred from July, 1990 through April, 1993. Docket No. 15000. An amended final application of August 22, 1995, further detailed fee and expense requests. Docket No. 17969.

Debtor alleges Houlihan's time records and expenses do not support an allowance for fees or reimbursement of expenses. Most time entries are in one hour increments. Large time blocks are described with scarce detail, debtor complains. The Court agrees.

Debtor supports the objection by identifying specific time and expense entries, asserting these entries are contrary to both the U.S. Trustee agreement and the Code. Houlihan did not begin keeping time records until January, 1992. Applicant did not recreate time records before that date.

The final fee application does not include a breakdown of out-of-pocket expenses. Instead, it offers a two page summary of expenses incurred. The expense portion of the application is devoid of detailed descriptions and lacks supporting receipts or documentation.

Debtor notes Houlihan earlier provided certain receipts in prior interim applications and responded to discovery regarding expenses. However, debtor correctly asserts it is applicant's burden, not objector's, to prove the expenses are compensable.

Objector states that most time entries fail to give sufficient detail or descriptions of services or expenses. Debtor wants combined professional time, at conferences, meetings and Court hearings, stricken.

Finally, objector alleges unreasonable travel entries. Houlihan reports at least 400 hours in travel status. Such fees comprise

approximately 10% of total hours billed. The July 1991 order limits the billing rate for travel, if no work is performed, to 25%. Houlihan billed 100% of its rate for travel. Applicant provides no indication the travel time spent was spent working on this case.

## II

In its first amended fee application, Houlihan notes it was retained as the financial advisor to the bondholders' committee in July, 1990. Docket No. 17969, at 2. The retention, approved by the Court on September 19, 1990, contemplated a flat fee of $100,000 per month, plus reimbursement of expenses. Under this agreement, debtors could terminate Houlihan's employment with 30 days' notice. For the first six months following retention, Houlihan worked for both official committees. Subsequently, the unsecured creditors' committee retained separate professionals. Applicant was not terminated until after the effective date of the plan. *Id.*

On October 8, 1993, Houlihan filed its original fee application. Its first amended application was filed August 22, 1995. Docket No. 17969. From July, 1990 through April, 1993 (the application period), Houlihan says it provided professional services, at a flat monthly rate, in the sum of $3.3 million. Of that amount, Houlihan received interim compensation of $3 million. In addition, it incurred $207,699.35 in reimbursable out-of-pocket expenses. Interim reimbursement of $180,303.31 for expenses was paid. Docket No. 17969 at 2–3.

In summary, of the $3,507,699.35 in services rendered and costs incurred, Houlihan has been paid $3,180,393.31. The sum of $327,306.04 was held back pending final review and approval. *Supra* at 3.

Houlihan says it filed the amended fee application to supplement descriptions in the original application. It states the amended application must be reviewed within the scope of the original retention arrangement, as modified by agreement with the United States Trustee and the standards of the code. *Id.* at 5.

Houlihan notes its original contract did not require maintenance of time records with the detail and specificity required of attorneys and accountants. The original retention was consistent with the customary practices of investment banking. Such firms typically charge a flat rate, payable monthly, as opposed to maintaining detailed time records, applicant maintains.

Houlihan reports the original retention was modified by agreement with the United States Trustee. The firm concedes it did not maintain time records in the required half hour increments. However, it submits the original and amended applications accomplish the desired result: sufficient detail to review the nature and extent of services rendered and costs incurred.

The fact more than one professional attended a meeting is not objectionable, given the complexity of the case, applicant argues. Under its engagement, it is paid a flat fee. If more than one professional is involved in a meeting, applicant is paid the same. Thus, debtor was not charged a greater amount for more than one professional.

Applicant says the inquiry should focus on whether the original terms of the retention agreement were improvident in light of developments not capable of being anticipated originally. This Court approved applicant's employment and fee in the original retention order. The Court necessarily determined at that time that retention met section 330 standards. 11 U.S.C. § 330(a)(3). Accordingly, Houlihan suggests the present inquiry is limited to that question.

## III

Applicant made an offer of judgment, arguing the final amended application and related exhibits provide sufficient detail to allow adequate review. Docket No. 18024, at 1–3. In the context of this offer, applicant requests the Court make a determination based upon debtor's pleadings. *Id.* at 3–4.

In making such a ruling, applicant believes the standard is whether the original terms of the retention were improvident in light of developments not capable of being anticipated originally. *Supra.*

Applicant notes that under the retention agreement it is entitled to recover its legal costs in obtaining approval and payment of fees. To facilitate resolution of the amended final application, applicant makes the following offer: Final approval of $3 million previously awarded as interim compensation; final approval of $180,393.31, previously awarded and paid in out-of-pocket expenses; disallowance of $300,000 sought for professional services; disallowance of $27,306.04 for out-of-pocket expenses incurred; waiver by applicant of all costs and attorneys' fees from Circle K. *Id.*

### IV

In response, Circle K objected and moved to strike. Docket Nos. 18016–18018. Debtor argues the amended application remains fatally defective for five reasons:

1. Inadequate time accounting: There is little substantive change between the original and the amended fee applications.

2. Applicant shrugs off failure to honor the agreement with the United States Trustee with the cavalier assertion its narrative provides sufficient detail.

3. Debtor charges applicant failed to satisfy section 330 because of inadequate time records. It is impossible to determine whether the services were reasonable, actual or necessary. While applicant lauds its efforts to provide additional detail of the services rendered from 1990 through 1993, a noncontemporaneous narrative, without identification of the preparer's identity or qualifications, does not create a prima facie predicate of estate benefit.

4. No actual benefit was conferred. Nowhere in its amended description of tasks performed does applicant identify benefit to the estate. It is impossible to determine what actually was accomplished, debtor argues.

5. Applicant failed to present a prima facie showing. There is no factual or foundational basis to grant the request. An example is often illegible copies of receipts, without supporting declarations or affidavits. The accounting by applicant for total expenses and supporting invoices is illegible.

Section 330 and Rule 2016(a) apply and require a detailed statement of services rendered, debtor urges. 11 U.S.C. § 330(a)(3); Rule 2016(a), *Fed.Bankr.R.*

Applicant's reliance on section 328 is misplaced, debtor argues. First, the original application in July, 1990 clearly states Houlihan will provide monthly invoices detailing services performed. All fees paid remain subject to Court approval in a final fee application. Applicant's final fee application of October, 1993 clearly states its request is made under sections 327 and 330. No mention is made of section 328 until debtor challenged the application.

■ The deference afforded applications by section 328 does not apply unless the appointment order expressly, unambiguously states specific terms and conditions are being approved. The retention order did not unconditionally approve employment terms. Instead, the Court approved terms subject to review and a final fee application. The order did not refer to section 328 and expressly reserved the right of the Court and all parties to review fees.

As an alternative, Circle K suggests if the Court is reluctant to strike the entire application, one-half of all fees should be denied as lacking substantiation. Applicant began employment in July, 1990. For fully one-half of the time employed, no record of services was maintained. The time records submitted begin in January, 1992, although applicant promised the United States Trustee to begin time recordation in November, 1991. Neither the Court nor debtor have anything to review, debtor argues.

### V

The first issue is what standard governs: section 328(a) or section 330. 11 U.S.C. §§ 328(a), 330(a)(1).

■ Under section 328(a), a committee, with court approval, may employ a professional under section 327 or section 1103 on reasonable terms and conditions. Notwithstanding such terms and conditions, the court may allow different compensation, if the original conditions were improvident in light of

developments not capable of being anticipated. *In re Circle K Corp.*, 165 B.R. 653, 656 (Bankr.D.Ariz.1994).

■ Where a bankruptcy court previously approved compensation terms, it cannot subsequently alter those terms unless the original terms were improvident in light of unanticipated developments. *Pitrat v. Reimers (In re Reimers)*, 972 F.2d 1127, 1128 (9th Cir.1992).

Section 330(a) provides, after notice and hearing, and subject to sections 326, 328 and 329, the court may award a professional, reasonable compensation for actual, necessary services, based on their nature, extent and value, time spent, and costs of comparable services. 11 U.S.C. § 330(a)(1). Reimbursement for actual, necessary expenses is also allowed. 11 U.S.C. § 330(a)(1)(B).

These sections work in tandem. Section 330(a) provides the framework for review, expressly subject to the limitations of section 328(a). *In re Circle K, supra*, at 656.

The application to employ Houlihan is docketed as document 849. Houlihan was to receive $100,000 per month commencing July 12, 1990. The retention would last a minimum of three months. Houlihan agreed to provide debtors "with monthly invoices detailing services rendered. All fees so paid remain subject to subsequent Bankruptcy Court approval in a final fee application to be filed." Application at 4.

In addition to the monthly retainer, applicant would be reimbursed for expenses. This reimbursement also remains subject to Court approval in a final application. *Id.*

The retention agreement could be terminated at any time upon 30 days written notice. It is attached as Exhibit A to the application. The agreement is expressly subject to Court approval. Houlihan agreed its fees would be subject to the provisions of section 327, *et seq. Id.*

At a September 19, 1990 hearing, committee counsel indicated this employment application fell within the stipulation to retain professionals. The Court then approved the retention. All fees were subject to Court approval after submission of an appropriate application. Minute Entry of Sept. 9, 1990, Docket No. 1540.

The stipulation referenced in the September hearing is executed between debtor and the official committees. This agreement resulted in withdrawal of debtor's motion to merge the committees. Docket 1076.

In the stipulation, debtor acknowledged that each committee, subject to Court approval, could retain a financial advisor. The committees acknowledged debtor had the right to object to the retention terms, including compensation. *Id.*, at 8.

The committees acknowledged there could be times when services of financial advisors were not essential. Each committee would use its best efforts to seek discrimination in the monthly fees paid its advisor, consistent with avoiding unnecessary work and costs. *Id.* at 9 and 10.

The order approving retention was entered on September 19, 1990. Docket 1544. In that order, debtor was authorized to pay applicant $100,000 per month and expenses, subject to judicial review of a final fee application, submitted on notice under relevant provisions of the Bankruptcy Code.

In some respects, the instant employment application is similar to the application construed in *In re Circle K Corp., supra.*

In that case, an April 16, 1991 order expressly provided Salomon Brothers would be paid $100,000 per month and out-of-pocket expenses. This order provides the same.

In the Salomon dispute, the engagement letter and application were filed by stipulation between the committees and debtor, outlining rules for retention of financial advisors. It was at least implied that the financial advisor would receive monthly fees. It appeared the parties contemplated a flat fee arrangement for Salomon. 165 B.R. at 656.

In this case, while the employment application was filed before the stipulation, the parties also appear to have contemplated a flat fee arrangement.

In the Salomon dispute, the retention order's language did not suggest the Court was requiring detailed time-keeping. That retention agreement and order did not specifically authorize employment with compensation and reimbursement fixed by further order. *Id.* Cf. *In re Gillett Holdings, Inc.*, 143 B.R. 256, 259 (Bankr.D.Colo.1992).

There are important differences between the Salomon application and the instant case, however. First, the Salomon application is expressly submitted pursuant to section 328. *In re Circle K Corp., supra,* at 655. There is no such reference in the Houlihan application. Second, after the Court approved the retention application, Houlihan reached agreement with the United States Trustee on reporting requirements:

> Houlihan ... will file with the Bankruptcy Court quarterly reports containing its professionals' time entries and summarizing how the services provided benefited the estate. Houlihan ... professionals will report their time in half-hour increments and provide detailed descriptions of the services performed. Expenses will be separately and thoroughly listed with copies of all receipts for travel expenses provided. Houlihan ... has agreed to implement this reporting procedure as of November 1, 1991.

Houlihan Letter of Dec. 6, 1991, Docket No. 17761, at Exhibit D.

This letter agreement was in response to Justice Department concern over monitoring Houlihan's fees and expenses. There was "currently no way for our office to monitor your firm's fees and expenses ..." U.S. Trustee Letter of November 22, 1991, Docket No. 17761, at Exhibit C.

There are two ways to examine the Houlihan retention agreement. First, if it meets the bare requirements of section 328(a), and highly detailed time entries are not required, the Court must still have a basis to determine Houlihan did the work.

Additionally, the Court should support the agreement between the U.S. Trustee and Houlihan. Houlihan specifically agreed to provide detailed monthly billing statements. This was to quiet concerns Houlihan was not aware (or bound by) the procedure authorized for all other professionals. The agreement insured Justice could monitor Houlihan's fees and expenses. Letter at Exhibit C, *supra.* Therefore, even if this is a flat fee retention, there is a later binding agreement to provide detailed billing.

Alternatively, a flat fee retention expressly subject to final court review can be viewed as a monthly retainer. 11 U.S.C. § 328(a). As noted in *U.S. Trustee v. Knudsen Corp. (In re Knudsen Corp.),* 84 B.R. 668, 671 (9th Cir. BAP 1988), section 328(a) authorizes a retainer. A retainer contemplates payment of a lump sum at the beginning of the case or periodically thereafter. *Id.* Fees are not finally allowed, i.e., they are subject to disgorgement, until a detailed final application is filed, noticed, an opportunity for objection and hearing is provided, and the court reviews and approves the application. *Id.*

This latter view conforms to the December, 1991 order that mandates filed monthly statements including a summary of time billed by project and a detailed description of services provided by each professional. There is a 20% hold-back provision and a final application requirement. Amended Order at Docket 5960. This is a classic *Knudsen* order. While it did not specifically apply to investment bankers, Houlihan consented to similar reporting procedures in its letter agreement of December 6, 1991.

Assuming this is a flat fee retention, the agreement with the U.S. Trustee, the requirement of a final application and the fact Houlihan's application specifically referenced section 330, all indicate applicant was, or should have been, aware of a duty to provide detailed fee information. Houlihan noted in its original final application that at the time of appointment, it "was not asked to account for its time, nor was (or is) it Houlihan Lokey's normal practice to maintain time records. However, pursuant to this Court's Order Approving Compensation and Reimbursement Procedure for Chapter 11 Professionals entered on June 18, 1991, as amended December 18, 1991, Houlihan Lokey agreed to maintain general time records with respect to professional time and tasks performed." Docket No. 15000, at 4.

In short, Houlihan admits that in its original fee application, filed under section 330, it promised to maintain time records. Actually, applicant agreed to do much more. It agreed to file quarterly reports, log time in half hour increments and provide detailed descriptions of services performed. Finally, applicant agreed to separately, thoroughly list expenses. Letter Agreement at Exhibit D, *supra.* This was not done.

It is disingenuous to now assert section 328 applies and the Court can only examine whether the employment agreement was improvident. Regardless of whether section 328 applies, as in Salomon, or more realistically, whether section 330 applies, the Court must examine in detail the fee application based on the letter agreement.

In the present case, the detail provided is woefully short of that required by the U.S. Trustee and section 330(a). Professionals must maintain and present meticulously accurate time records of all services rendered to the estate as a necessary prerequisite to fee recovery. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985). Detailed fee statements enable the bankruptcy court to fulfill its obligation to examine carefully requested compensation to justify an administrative expense. *Id.*

Here, there is insufficient detail to support such a large fee. There is a duplication between entries apparently prepared by Circle K and the entries prepared by Houlihan. The Court will accept objector's offer to grant one-half of the requested fees. Debtors will lodge and serve a proposed implementing order.